CitKit, J.
The questions arising on this appeal are, 1. Whether there was such an agreement between Chichester, the creditor, and M’Carty, the principal debtor, as released Mason, the surety in the forthcoming bond ? 2. Whether the creditor’s directions to the sheriff, not to levy the execution, operated, under the circumstances of the case, to release the surety ?
The cases are very numerous, both at law and in equity, which discuss and settle the grounds and principles on which it has been decided, that a creditor by dealings with his principal debtor may release a surety. They are laid down at large and with great clearness by judge Green in Norris v. Crummey, and again by judge Cabell in Hunter v. Jett. The latter says, “ I entirely concur with judge Green, as to the law in regard to the discharge of sureties, as laid, down by him in Norris v. Crummey—that if a creditor, by agreement or any other act, precludes himself at law from proceeding against the principal after the debt is due, even for a moment, or if the agreement be such as would induce a court of equity to prohibit the creditor from proceeding at law, the surety is discharged ; and I also entirely concur with him, that the true ground or principle on which a surety is relieved iu such cases is, that the creditor, by his act or agreement, has injured the surety bj impairing his rights and remedies.” The injury here spoken of is some obstruction to the surety’s right to pay up the money, and thereby acquire the power of immediately pursuing the debtor; or to his remedy of filing his bill quia timet. If the creditor has tied up his hands, so that he could not himself immediately pursue *254 the debtor; there, the surety could not do so, either on paying up the debt or filing his bill, for he can only be substituted to such rights as the creditor has. Let us see whether the case before us falls within this rule.
Suppose the alleged contract between Chichester and M’Carty, whereby the former agreed to give indulgence to the latter, fully proved (though the proof of the agreement seems to me somewhat vague and inconclusive); the question, and the only question which concerns the surety, is, did that contract in the slightest degree impair his rights or impede his remedies ? There was an execution in the sheriff’s hands, at the time, both against the principal and surety. Suppose the surety,had paid the debt, and (as of right he could) had taken control of the execution, and had it levied on the property of the principal; does any one imagine that M’Carty, on the strength of this vague arrangement, not binding the hands of Chichester for a definite moment of time, and withal usurious, could have stopped the proceeding an instant ? Or if, instead of paying the money and taking the creditor’s place, the surety had chosen to file his bill quia timet, calling the parties ihto equity,, and praying a decree against the principal debtor for payment of the debt to the creditor; could the debtor have stayed for a moment the progress of the court, by a defence rested on such an agreemént as this ? Surely, there needs no authority to shew that he could not. But there is authority. When the cases speak of an agreement which ties up the hands of the creditor, they mean a valid agreement upon sufficient consideration. Thus, in M’Lemore v. Powell, judge Story, delivering the opinion of the court, says—“We admit the doctrine, that although the indorser has received due notice of the dishonour of the bill, yet if the holder afterwards enters into any new agreement with the drawer for delay, in any manner changing the nature of the original contract, or affecting the rights of the indorser, or to the prejudice of the-lat *255 ter, it will discharge him. But in order to produce such ... ... a result, the agreement must bo one banding m law upon the parties, and have a sufficient consideration to support it. An agreement without consideration is utterly void, and does not suspend for a moment the rights of any of the parties.” Again, in Walwyn v. St. Quintin, 1 Bos. & Pull. 652. and in Arundel Bank v. Goble, Chitt. on Bills 447. note (k).* the same doctrine is laid down. Again, in Philpot v. Briant, cited at the bar, it is decided that if the executor of the acceptor of a bill of exchange orally promise to pay the holder out of his own estate, provided he forbear to sue, and the holder forbear to sue in consequence; the promise being void (under the statute of frauds) the drawer of the bill is not discharged by the holder’s having promised to give time, and having delayed to sue under such circumstances. If the agreements here spoken of do not discharge the surety, simply because they have no valid consideration, how much stronger is the case, where the consideration is one which a statute declares illegal, and that all bonds, contracts, covenants, conveyances or assurances, made on such consideration, are utterly void? I conclude then, that there was no agreement here discharging the surety.
Then, did the directions of the creditor to the sheriff to hold up the execution, discharge the surety ? Here, again, there is a want of certainty in the allegations and proof, since the execution is not in the record, so that the court may see the date of it, when it came to the sheriff’s hands, when it was returnable, and what return he made on it. But to the question—It is contended, that this execution in the hands of the sheriff constituted a legal lien on the personal estate of the debtors, and that by the direction of the plaintiff to hold it up, he destroyed this lien as to the principal debtor, and thereby released the surety. The proposition is *256 founded on the doctrine of subrogation, by which a surety paying the debt is entitled to stand in the place 0f the creditor, and to have all his securities transferred to him ; and if the creditor has discharged any of these, unless in doing so he has acted with good faith and just intention, he shall be precluded from so much of his demand against the surety, as this latter might have obtained if the transfer could have been made. This is the acknowledged doctrine: but I think the securities here spoken of are very different from the lien of a fi. fa. delivered. They are (in all the cases I have seen) existing, complete, perfected liens : the lien of a fi. fa. delivered is not so. The delivery of the execution does not alter the. property of the goods, for that is still in the defendant; Gilb. on Ex’ons, 13. 14. Lowthal v. Tonkins, 2 Eq. Ca. Abr. 381. The property is changed by levying the execution, and not till then; Clerk v. Withers, 1 Salk. 322. , If A. deliver an execution to the sheriff to-day, and B. a week hence, and the execution of B. be first levied, it will take precedence of A.’s; Sandford v. Roose, 12 Johns. Rep. 162. If an execution be returned without being levied, and a new one be issued, the lien will not relate back to the date of the former. These things shew, that the lien of the fi. fa. delivered is uncertain and inchoate merely, depending for its consummation on a further act. It is therefore unlike the securities spoken of in the cases. But further, it seems to me, that a doctrine like that contended for would materially interfere with the free choice, which it is admitted the plaintiff has, of pursuing his debtor in any of tbé forms given by the law, and changing such form just as his interest and his judgment shall dictate. If on getting judgment the creditor elect to take an elegit, it binds from the date of the judgment; but it will not therefore be said, that he is not at liberty to resort'to a different execution, and thereby waive this lien. Suppose a ca. sa. levied, and the debtor com *257 mitted to jail; a lien is thus raised on his estate, real and personal; but if the jailor turn him out for failure to pay the prison fees, the lien is gone : yet it will hardly be said, that any surety would by this proceeding be released. I need not, however, rely on this kind of reasoning, for we have a case decided by this court directly in point, and stronger, I think, than the case at bar; I mean the case of M’Kenny’s ex’ors v. Waller. There, the executions were put into the sheriff’s hands, and he went to the house of the principal debtor three days before the return day to levy them; the debtor prevailed on the creditors to indulge him, and they, at his instance, without the knowledge of the surety, gave written instructions to the sheriff “not to levy the executions till they should see him.” The sheriff returned, “ not executed by order of the plaintiffs the executions were renewed; but, in the mean time, the debtor had removed his property beyond their reach, and the executions were levied on the property of the surety. I say that case is stronger than the one before us; for there, we saw exactly what was done,—that the executions were almost at the return day when the sheriff went to levy, and that the suspension carried them beyond it; we saw the return too; and we saw that by the interference of the creditors, the property, or great part of it, was eloigned. But here, we do not see the proceedings under the execution, or whether out of date at M’ Carry’s death, or what was the return ; and we do see, that there was no removal or loss of property by the delay. Now, can it be doubted, that if the surety had used due diligence he might have made this money? If he had paid the debt, and acted promptly, I have no doubt he might. The case of M’Kenny’s ex’ors v. Waller, then, is stronger than that before us; and it is most clear that that case was not passed over without examination; for cases turning upon the release of sureties were quoted by both counsel. And the *258 court said—“ that according to the principles of the cases decided by this court on this subject, there was no ground whatever on which the decree could be supported.” It was, indeed, objected to the authority of that case, that the point with respect to the lien of the fi. fa. was not raised or considered : but this is an argument which may cut the other way: if the counsel who argued that case, and the court who examined it, either wholly overlooked the objection, or did not think it of sufficient weight for discussion, and if in all the numerous cases which have occurred, this objection has never been started, ought it not to excite some distrust of the soundness of the objection itself? The case of Mayhem v. Crickett (from the short sentence quoted at the bar) seemed to say, that if a plaintiff took out an execution, and did not proceed on it, he discharged the sureties. I felt sure, however, that lord Eldon could not mean that; and I find, on looking at the case, that though he is made to express himself loosely in one or two places, yet he makes it clear at least, that he means what I had before understood to be the law. The case before him was one of an execution levied, and after-wards the property given back to the debtor, without the consent of the surety; and when he seems to speak somewhat at large, we must recollect that he has reference to the case before him. But, at length, he speaks thus—“I think it clear, that though the creditor might have remained passive, if he chose, yet if he takes the goods of the debtor in execution, and afterwards withdraws the execution, he discharges the surety, both at law and in equity.” Here, we see exactly what he means by “ taking out the execution and waiving it," and by saying that the plaintiff “is a trustee of his execution for all parties interested.” He considers him as lying passive, unless he takes the goods under his execution; but once taking them, he is a trustee for all concerned, and cannot let them go (except by consent) without dis *259 charging the sureties. I conclude, that, both upon reason and authority, there is nothing in the second point.
I think the decree should be reversed, the injunction dissolved, and the bill dismissed.
Bkockejíbb.otjgh, J. concurred.
Cabell, J.
I am of opinion, that the obligation of the surely was extinguished by the dealing of the creditor with the principal debtor. I do not place the discharge of the surety on the ground, that, by the arrangement between Chichester and M’Carty, time was so given to the principal debtor as to tie up the hands of the creditor, and thereby to impair the remedies of the surety. I do not think that that ground could be taken in this case. But that is not the only ground on which the obligation of a surety has been held to be extinguished. There are other and higher grounds for such discharge. I put the discharge, in this case, on the ground that the creditor had, by putting his execution into the hands of the sheriff acquired a lien on all the unincumbered goods of the principal debtor, for the payment of his execution (it is proved they were abundantly sufficient for the purpose); and that, by the arrangement made, he voluntarily and fra.udulently parted with that lien, without the knowledge or consent of the surety.
No rule is better established than that which declares that if a creditor, without the consent of the surety, parts with a security which he would be entitled to apply to the payment of his debt, the surety is thereby exonerated, at least pro tanto. And this rule is applicable not only to securities acquired by the contract of the parties, but also to those acquired by the operation of the law. The case of Mayhew v. Crickett is an exemplification of this rule. In that case, lord Eldon said—“ The second ground was, that the defendants (the creditors) had, by releasing their execution, *260 relinquished their remedy (against the surety! at least . , ^ ' pro tanto. 1 always understood, that if a creditor takes out execution against the principal debtor, and waives it, he discharges the surety, on an obvious principle which prevails both in courts of law and in courts of equity”—“ There can be no doubt, that it is a question fit to be tried at law, whether, if a party takes out execution on a bill of exchange, and afterwards waives that execution, he has not discharged those who were sureties for the due payment of the bill. The principle is, that he is a trustee of his execution for all parties interested in the bill.” There is no difference in this respect, between sureties to a bill, and sureties for any other debt. And, in fact, the case then before lord Eldon, and to which he applied the principle, was not the case of a surety to a bill of exchange, but a surety (not an indorser) to a common promissory note. It is true that in that case the- execution had not only been taken out, but had been levied; and lord Eldon, when he came specially to apply the principle to it, adds— “ that though the creditor might have remained passive, if he chose, yet if he takes the goods of the debtor in execution, and-afterwards withdraws the execution, he discharges the surety both at law and in equity.” And I admit, that the case thus decided by lord Eldon, may, perhaps, be authority in those cases only where the goods have been taken in execution. But the principle on which it was decided, is, from its nature, susceptible of application to other cases where the execution may not have been levied. Although the delivery of an execution to the sheriff does not give so perfect a hold on the property of a debtor as the levy of the execution, yet it is undeniable that the delivery to the sheriff does give a lien on all the goods of the debtor for the payment of the debt, and that this lien follows the pro; perty into the hands of a subsequent purchaser even for valuable consideration. If the principle, that a credi *261 tor is “ a trustee of his execution, for all who are interested” is to prevent his releasing the hold acquired by the levy of the execution, why shall not the same principle prevent his parting from that hold which is acquircd by the delivery of the execution? It is alien for the benefit of the surety, as well as the creditor; for, if enforced, it may insure the payment of his debt. When a creditor voluntarily releases such a lien, not for the honest purpose of resorting to other remedies which he may deem more efficient, nor even from motives of kindness or humanity towards the debtor, but for the corrupt purpose of additional gain to himself, at the risk of the surety, he becomes a faithless trustee of the execution, by a gross fraud committed on the innocent surety; especially when, a.s in this case, the creditor knew the principal to be unworthy of trust, and consequently that if trusted, it would be at the expense of the surety. I cannot think such a fraud will be tolerated in a court of equity and good conscience. I think it a case which demands the application of the principle announced by lord Eldon, much more strongly than the case of Mayhew v. Crickett.
It is said, however, that the case of M’Kenny’s ex’ors v. Waller is an authority in point against the proposition I have stated. I cannot think so. There are ingredients in this case which arc not to be found in that. There was no proof in that case that the principal was embarrassed, or in failing circumstances, nor that he was thought to be so by the creditor; above all, there was no proof of corrupt motives on the part of the creditor, inducing the release of the execution. It wras an indulgence from motives of mere kindness and humanity towards the debtor. That case, therefore, may have justified a decision which would be very improper in this. Besides, I am very confident that the principle on which I rest this case was not brought to the view *262 of the court in that. The counsel for the creditor cited . only Norms v. Crummey and Hunter’s adm’rs v. Jett; and the counsel for the surety cited no other case than J Peel v. Tatlock, 1 Bos. & Pull. 422. Neither of which cases has the most distant allusion to the principle now contended for. The resolution of the court delivered by judge Coalter, is embraced in three lines, declaring that “ according to the principles of the cases decided by this court, on this subject, there was no ground whatever on which the decree could be supported.” I have carefully examined every case that has ever been decided by this court, having, as I supposed, any reference to the exoneration of sureties, from Croughton v. Duval, to M’Kenny’s ex’ors v. Waller; and I think I shall not be found to be mistaken, when 1 say, that there will not be found in any one of them, any allusion 'to the question, whether the release or withdrawing of an execution put into the hands of the sheriff, is or is not a discharge of the surety. Croughton v. Duval, 3 Call 69. Ward, v. Johnston, 6 Munf. 6. Hill v. Bull, Gilm. 149. Bennett v. Maule, Gilm. 328. Norris v. Crummey, 2 Rand. 328. and Hunter’s adm’r v. Jett, 3 Rand. 104. In the first of these cases, the question was as to the effect of the neglect or refusal of the creditor to sue the principal; and in all the others the question was, whether the surety was discharged by the creditor having given time, and thereby tied up his hands, so as to impair the remedies of the surety. When, therefore, the court in M’Kenny’s ex’ors v. Waller, refer to the principles heretofore decided by this court, as decisive of that case, the inevitable inference (as 1 conceive) is, that the attention of the court was directed solely to the question, whether the creditor had so indulged the debtor, as to tie up his hands, and thereby injure or impair the remedies of the surety. If this inference be correct, that case will be stript of much of it's force *263 as authority even in cases where the circumstances may _ • i' i * be precisely the same.
It may be said, that if the principle I have stated be correct, cases requiring its application must have frequently occurred, and that it would have been announced in former decisions; and that the absence of such decisions is proof of the non-existence of the principle. I admit that such an objection is not without its weight. But I do not think it conclusive. It might have been urged, with equal propriety, against the decision of lord Eldon in Mayhew v. Crickett; for that case, although it was not decided till 1818, is the first case that I have been able to find, in any of the cnglish decisions, in which the principle laid down by lord Eldon was applied to the release or withdrawing of an execution levied: and my researches have been anxious and laborious, and have extended to every case that I thought likely to have any bearing on the subject. It is certain, that it is the only case referred to in the valuable . elementary treatises of Theobald on the law of principal and surety, and by Hovenden on frauds; and both of these writers lay down the principle in general terms, embracing executions delivered to the sheriff, as well as executions levied.
There is another case decided by this court, which was not referred to in the argument, but which I have carefully examined. I allude to the case of Alcock v. Hill, 4 Leigh 623. in which the execution was withdrawn by the creditor, after having been put into the hands of the sheriff. But tha,t case is liable to all the remarks which 1 have made on M’Kenny’s ex’ors v. Waller, as contradistinguished from this. Besides, in that case the creditor had, through the sheriff, stipulated with the surety, when he became such, that he would give indulgence, and in compliance with that stipulation, he withdrew the execution which had been issued by the clerk, without his knowledge. The sole ques *264 tion considered in that case, was, as in M'Kenny’s ex’ors v. Waller, whether by the indulgence granted, the creditor had tied up his hands, so as to impair the remedies of the surety.
I think, therefore, that this is the first case, in which the attention of the court has been called to the question, how far the release or withdrawing of an execution by the creditor, shall operate the discharge of the surety. In this view of it, it is a new case. But, in the infinite diversity of human transactions, new cases must often occur; and when they do occur, they can be decided only by those, general principles of law and equity, which are applicable to them. And when a principle is correct in itself, and is applicable to a case, the novelty of the case presents no objection to the application of the principle as the rule of decision.
I am therefore of opinion, that the decree be affirmed. I deem it proper, however, to state distinctly, that I do not mean any thing which I have said, to be considered as impairing the discretion which the law vests in a creditor, in the pursuit of his legal remedies. I readily admit his right to withdraw an execution, provided he withdraws it for the purpose of resorting to another execution which he thinks will be more effectual. I can readily conceive a case in which he would be justifiable in withdrawing, against the wish of the surety, even an execution levied. Suppose a fi. fa. to be levied on property greatly inadequate to the payment of the debt, and the creditor has reason to believe that the debtor is about to remove himself and all his other property, before the day of sale. Surely, in such a case, he might withdraw his execution, return it, and take out a ca. sa. His own. interest would require it; and in pursuing his own interest, under such circumstances, he would violate no duty which, as the trustee of his execution, he owes to others who are interested in the payment of the debt.
*265 Brooke, J.
I entirely concur with judge Cabell, in the opinion he has delivered ; and shall add but a very few remarks. If we are to be governed by the principle of the statute of 1794 on this subject, 1 Rev. Code, ch. 116. § 6. p. 461. any extraordinary indulgence by the creditor to the debtor, after judgment and execution, should discharge the surety. By that statute, when notice in writing is given by the surety to the creditor, he is required to bring suit in a reasonable time, and to use due diligence to make the debt by execution. And though the creditor obtains judgment and execution without such notice, I am not sure, that he ought not to use the like diligence to make the debt, which is prescribed by the statute when he has notice to bring suit. Having brought suit and obtained judgment and execution, the surety has a right to expect that he will go on to make the debt, without his giving him notice to do so.
The decision in the case of M’Kenny’s ex’or v. Waller, does not impugn this doctrine. The court, in attending to the arguments of counsel in that case, may have overlooked the actual case before it. It is evident, that that decision turned on the question, whether the creditor had so tied his hands, that he could not proceed on the execution; and finding no pretence for that, in the case, the court refused to discharge the surety. But if I am mistaken in this, the indulgence there given, was given in good faith, and not for any sinister object, as in the case before us. The debtor, there, did. not appear to have been embarrassed in his circumstances; or if he was so, it did not appear to have been known to the creditor: neither was there ground for any suspicion that he would remove his property out of the reach of the execution, when the indulgence was given. Here, on the contrary, it is very clear, that the creditor had no confidence in the solvency of the principal debtor. The exaction of an agreement from the debtor, *266 to pay ten per cent, for indulgence, evinced the creditor’s knowledge, that he was embarrassed in his circumstances ; and the very willingness of the debtor to pay such a premium, ought to have forbidden any indulgence. If the creditor had, with good faith, respected the interests of the surety, the principle of the case of Mayhew v. Crickett might not be applicable to this ca.se; as I think it was not applicable to M'Kenny's ex'or v. Waller, where if was not to be inferred from the facts, that there was any breach of trust by the creditors, who were executors; and considering them as trustees for the sureties, in the control of the execution, they were also trustees for the estate of their testator, not acting for themselves, and might well be presumed to have thought they were acting for the interests of all parties. As regarded the estate of their testator, they were bound to do so; and when they gave the indulgence, there was not the slightest proof of any other motive. Even in a case coming expressly under the statute of" 1794, it must be admitted, that the creditor must have some discretion. It is the interest of the surety that he should. He may withdraw the execution, if in good faith he is in pursuit of the debt by other^means. Cases might be put, in which he could not rely entirely on the solvency of the surety, and he may find it for the interest of all parties to give indulgence. In the case before us, there was no such pretence. As to the argument that the surety may at all times, if he thinks himself in danger, take an assignment of the debt on paying the money; that has never been relied on as his only remedy, or indeed as any indemnity; if so, the bill quia timet was in many cases useless, and so was the notice under the act of 1794, which seems to have been substituted for the bill quia timet. It is true the surety may pursue that course; but it will rarely happen, that he can do so without considerable sacrifice. The creditor cannot indulge in spe *267 dilating on the interest of the surety on any such ground. I am of opinion that the decree be affirmed,
The judges being equally divided in opinion, decree affirmed.

 American edition, Springfield, 1836.